1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

| | | |
|---|---|---|
| 11 | J & J SPORTS PRODUCTIONS INC., | ) Case No.: 1:15-cv-01733 TLN  JLT |
| 12 | Plaintiff, | ) FINDINGS AND RECOMMENDATIONS |
| | | ) GRANTING IN PART PLAINTIFF'S MOTION |
| 13 | v. | ) FOR DEFAULT JUDGMENT |
| 14 | MIGUEL ANGEL BARAJAS, et al., | ) (Doc. 15) |
| 15 | Defendants. | ) |

16

17          Plaintiff J & J Sports Productions, Inc. seeks the entry of default judgment against Miguel

18  Angel Barajas and Guillermina Carrizales, individually and doing business as Village Sports Bar and

19  Grill (collectively, "Defendants").  (Doc. 15)  Defendants have not opposed this motion.  The Court

20  found the matter suitable for decision without an oral hearing pursuant to Local Rule 230(g), and the

21  matter was taken under submission.  (Doc. 18)  For the following reasons, the Court recommends

22  Plaintiff's motion for default judgment be **GRANTED IN PART**.

23  **I.          Procedural History**

24          Plaintiff initiated this action by filing a complaint against Defendants on November 16, 2015.

25  (Doc. 1)  Plaintiff asserts it possessed the exclusive rights to the nationwide commercial distribution of

26  *"Manny Pacquiao v. Chris Algieri WBO Welterweight Championship Fight Program"* ("the Program")

27  televised on November 22, 2014.  (Doc. 1 at 5-6, ¶ 18)  However, Plaintiff contends Defendants

28  broadcast the Program at Village Sports Bar & Grill without paying the requisite fee.  *Id.* at 6. Plaintiff

1

1  served Defendants with the complaint, but they failed to.  Upon the application of Plaintiff, the Clerk of

2  the Court entered default against the Defendants on January 15, 2016.  (Docs. 13-14)  Plaintiff filed the

3  application for default judgment now pending before the Court on February 15, 2016.  (Doc. 15)

4  ## II.       Legal Standards Governing Entry of Default Judgment

5        The Federal Rules of Civil Procedure govern the entry of default judgment.  After the Court

6  enters default, the party seeking relief may apply to the court for a default judgment.  Fed. R. Civ. P.

7  55(a)-(b).  Upon the entry of default, well-pleaded factual allegations regarding liability are taken as

8  true, but allegations regarding the amount of damages must be proven.  *Pope v. United States*, 323 U.S.

9  1, 22 (1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).  In

10  addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are

11  not established by default."  *Cripps v. Life Ins. Co. of North Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992)

12  (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

13        Entry of default judgment is within the discretion of the Court.  *Aldabe v. Aldabe*, 616 F.2d

14  1089, 1092 (9th Cir. 1980).  The entry of default "does not automatically entitle the plaintiff to a court-

15  ordered judgment.  *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord*

16  *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986).  The Ninth Circuit determined:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

21  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  As a general rule, the issuance of default

22  judgment is disfavored.  *Id.* at 1472.

23  ## III.      Plaintiff's Factual Allegations

24        The Court accepts Plaintiff's factual assertions as true because default has been entered against

25  Defendants.  *See Pope*, 323 U.S. at 22.  Plaintiff alleges that by contract, it was granted exclusive

26  domestic commercial distribution rights to the Program and, pursuant to that contract, "entered into

27  sublicensing agreements with various commercial entities throughout North America" to broadcast the

28  Program within their establishments.  (Doc. 1 at 5-6, ¶¶ 18-19)

2

Plaintiff alleges Defendants broadcast the Program in Village Sports Bar and Grill without purchasing a proper sublicense from Plaintiff.  (Doc. 1 at 5, ¶ 15)  Plaintiff asserts Defendants were each "an owner, and/or operator, and/or licensee, and/or permittee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as Village Sports Bar and Grill."  (*Id.* at 3, ¶¶ 7-8)

For this act, Plaintiff alleged violations of 47 U.S.C. §§ 553 and 605, conversion, and a violation of the California Business and Professions Code.  (*Id.* at 5-12)  In the application for default judgment, Plaintiff requests damages for the violation of 47 U.S.C. § 605 and conversion.  (*See* Doc. 19-1)  Therefore, the Court will address only these claims.

## IV.    Discussion and Analysis

Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds the factors weigh in favor of granting Plaintiff's motion for default judgment.

### A.    Prejudice to Plaintiff

The first factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and potential prejudice to the plaintiff weighs in favor of granting a default judgment.  *See Pepsico, Inc.*, 238 F. Supp. 2d at 1177.  Generally, where the Court has entered default against a defendant, a plaintiff has no other means by which to recover damages.  *Id.*; *Moroccanoil, Inc. v. Allstate Beauty Prods.*, 847 F. Supp. 2d 1197, 1200-01 (C.D. Cal. 2012).  Therefore, the Court finds Plaintiff would be prejudiced if default judgment is not granted.

### B.    Merits of Plaintiff's claims and the sufficiency of the complaint

Given the kinship of these factors, the Court considers the merits of Plaintiff's substantive claims and the sufficiency of the complaint together.  *See Premier Pool Mgmt. Corp. v. Lusk*, 2012 U.S. Dist. LEXIS 63350, at *13 (E.D. Cal. May 4, 2012).  The Ninth Circuit has suggested that, when combined, the factors require a plaintiff to "state a claim on which the plaintiff may recover."  *Pepsico, Inc.*, 238 F. Supp. 2d at 1175.

#### 1.    Claim arising under 47 U.S.C. § 605

The Federal Communications Act of 1934 ("Communications Act") "prohibits the unauthorized receipt and use of radio communications for one's 'own benefit or for the benefit of another not entitled

3

thereto.'"  *DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) (citing 47 U.S.C. § 605(a)).  In

pertinent part, the Communications Act provides, "No person not being authorized by the sender shall

intercept any radio communication and divulge or publish the … contents … of such intercepted

communication to any person."  47 U.S.C. § 605(a).  Thus, Plaintiff must establish it was the party

aggrieved by Defendants' actions.  47 U.S.C. § 605(e)(3)(A).  Plaintiff must also show Defendants

intercepted a wire or radio program and published it without permission. 47 U.S.C. § 605(a).

*a.*     *Party aggrieved*

Under the Communications Act, a "person aggrieved" includes a party "with proprietary rights

in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite

cable programming."  47 U.S.C. § 605(d)(6).  In the Complaint, Plaintiff asserted that J & J Sports

Productions was granted the exclusive, nationwide commercial distribution rights to the Program.

(Doc. 1 at 5-6)  In support of this assertion, Joseph Gagliardi, President of J & J Sports Productions

produced the Closed Circuit Television License Agreement between Top Rank, Inc. and Plaintiff,

granting Plaintiff "the exclusive license to exhibit . . . [the] live telecast" of the Program.  (Doc. 16 at

10-15)  Accordingly, the Court finds Plaintiff was the party aggrieved within the meaning of § 605.

*b.*     *Interception and publication of the Program*

Plaintiff acknowledges it cannot be certain of the method of interception used to obtain the

Program.  (*See* Doc. 19-1 at 8)  Similarly, in *Joe Hand Prod. v. Behari*, 2013 U.S. Dist. LEXIS 37277

(E.D. Cal. Mar. 18, 2013), the plaintiff was unable to identify the nature of the transmission.  This

Court observed: "Plaintiff's inability to allege the precise nature of the intercepted transmission in this

case …raises a question regarding the scope of 47 U.S.C. § 605(a) and the sufficiency of plaintiff's

claim under that provision."  *Id.*, 2013 U.S. Dist. LEXIS 37277 at *7.  Nevertheless, Plaintiff provided

evidence that Defendants broadcast the Program in their establishment, because an investigator

witnessed the Program broadcast at The Village Sports Bar and Grill.  (Doc. 15-3)

Because Plaintiff was a party aggrieved, and Defendants intercepted the Program and published

it without permission, Plaintiff has established the elements of a claim under the Communications Act.

2.     Conversion

As recognized by the Ninth Circuit, conversion has three elements under California Law:

4

"ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Services, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992); *see also Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581 (2005) ("elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages"). Previously, this Court determined the possession of "a right to distribute programming" constitutes ownership of properly for purposes of conversion. *DIRECTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182, 1189-90 (E.D. Cal. 2005) (citing *Don King Prods./ Kingsvision v. Lovato*, 911 F.Supp. 429, 423 (N.D. Cal. 1995)). Therefore, to state a claim for conversion, Plaintiff is required to possess the exclusive ownership of, or the exclusive right to license, the broadcasting of the Program.

Given that Plaintiff established it held the distribution rights, the company held a "right to possession of property." Further, Plaintiff alleged facts sufficient to support a finding that Defendants engaged in signal piracy by broadcasting the Program without a sublicense. The investigator counted the Program was shown on seven TVs and there were "approximately 16" people at the Village Sports Bar and Grill at the time. (Doc. 15-3 at 2) The rate sheet indicates a sublicense cost $2,000.00 for an establishment with the capacity up to 100 persons. (Doc. 16 at 17) Consequently, Plaintiff has established damages in the amount of $2,000.00, and states a claim for conversion against Defendants.

### C.    Sum of money at stake

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176. Here, Plaintiff seeks compensatory damages for Defendant's tortuous conversion of Plaintiff's property. Also, Plaintiff requests statutory damages totaling $110,000 for the violation of 47 U.S.C. § 605. This amount represents the maximum amount Plaintiff would be permitted to recover under the statute, including enhanced damages. (*Id.* at 9-10) Plaintiff asserts Defendant should pay the statutory maximum because nominal damages have proven insufficient to combat piracy. (*Id.* at 10)

Given the substantial amount of money at stake, this factor could weigh against the entry of default judgment. *See, e.g., Joe Hand Promotions v. Streshly*, 655 F. Supp. 2d 1136 (S.D. Cal. 2009) (proposed award amount of $100,975 was "manifestly excessive under existing law"); *J & J Sports*

*Productions. v. Montes*, 2013 U.S. Dist. LEXIS 9282, at * 5 (N.D. Cal. Jan. 22, 2013) ("the large amount of money that Plaintiff is requesting—maximum statutory damages—weighs against granting an entry of default judgment, particularly because the amount requested appears disproportionate to the harm alleged"); *Moore v. Cisneros*, 2012 U.S. Dist. LEXIS 177044, at *5 (E.D. Cal. Dec. 12, 2023) ("[d]efault judgment is disfavored when a large sum of money is involved"); *but see G & G Closed Events, LLC v. Shahen*, 2012 U.S. Dist. LEXIS 58723, at *18 (E.D. Cal. Apr. 26, 2012) ("the statutes involved contemplate such an award under certain circumstances," and the factor did not weigh against default judgment).  However, the factor does not weigh against Plaintiff's request for default judgment because the Court declines to enter judgment in the amount requested.

### D.    Possibility of dispute concerning material facts

Here, there is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts allegations in Plaintiff's Complaint as true and (2) though properly served, Defendants failed to appear.  *See Pepsico, Inc.*, 238 F.Supp.2d at 1177; *see also Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists").  Therefore, this factor does not weigh against default judgment.

### E.    Whether default was due to excusable neglect

Generally, the Court will consider whether Defendants' failure to answer is due to excusable neglect.  *See Eitel*, 782 F.2d at 1472.  Here, Defendants were served with the Summons and Complaint, as well as the motion for default judgment.  (*See* Doc. 19-1 at 23)  Given these facts, it is unlikely that Defendants' actions were the result of excusable neglect.  *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion").  Accordingly, this factor does not weigh against default judgment.

### F.    Policy disfavoring default judgment

As noted above, default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible."  *Eitel*, 782 F.2d at 1472.  Here, however, the policy underlying

6

the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against default judgment because Defendants' failure to appear before the Court and defend in this action makes a decision on the merits impractical.

**V.      Damages**

Under the Communications Act, a party aggrieved may recover actual damages or statutory damages "not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). When the Court determines a violation was "committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain," a court may award enhanced damages by increasing the awarded damages up to $100,000.00 for each violation. 47 U.S.C. § 605(e)(3)(C)(ii). The Court has "wide discretion" to determine the proper amount of damages to be awarded. *DirecTV Inc. v. Le*, 267 Fed, App'x 636 (9th Cir. 2008) (citation omitted).

The Court may consider a number of factors in its determination of the amount of damages, including any promotional advertising by the defendant, the capacity of the establishment, the number of patrons present at the time of the broadcast, the imposition of a cover charge, the number and size of the televisions used for the broadcast, and whether a premium was charged on food or drink. *J & J Sports Productions v. Sorondo*, 2011 U.S. Dist. LEXIS 99951, at * 10-11 (E.D. Cal. Sept. 6, 2011) (citing *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F.Supp.2d 1196, 1198 (N.D. Cal. 2000)).

Barry Thome, Plaintiff's investigator, noted there were no advertisements on the walls for the fight, and a cover charge was not required to enter The Village Sports Bar and Grill. (Doc. 15-3 at 3) Mr. Thome noted the venue had seven television sets, and the Program was broadcast on all of the sets. (*Id.* at 4) Mr. Thome did not estimate the capacity of the establishment, but "counted approximately 16" patrons present during the undercard preliminary bout. (*Id.* at 2) Finally, as noted below, this is not the first time Defendants have intercepted programs for which they did not have a license. Given these factors, the Court finds an award of $10,000— which is five times the cost of a proper sublicense[1]

---

[1] According the price list produced by Plaintiff, an establishment with a capacity of 1-100 people was required to pay $2,000, and one with a capacity of 101-150 was required to pay $3,000. (Doc. 19-4 at 17) Plaintiff contends the sublicense capacity of the bar was 150 people and cites to the declaration of Mr. Thome for this proposition. (Doc. 15-1 at 11) However, the Court cannot find any reference by Mr. Thome to the capacity of the bar and the photos provided of the interior of the location are inadequate for the Court to evaluate the its maximum capacity. (*See* Doc. 15-3 at 2-8)

7

1 —is appropriate.[2]

2    Plaintiff asserts a right to enhanced damages but allegations regarding the amount of damages

3 must be well-plead and supported by factual allegations.  *See Pope*, 323 U.S. at 22; *Geddes*, 559 F.2d at

4 560.  "The mere assertion that Defendant acted willfully is insufficient to justify enhanced damages."

5 *Sorondo*, 2011 U.S. Dist. LEXIS 99951, at *10 (quoting *Kingvision Pay-Per-View, Ltd. v. Backman*,

6 102 F.Supp.2d 1196, 1198 (N.D. Cal. 2000)).  However, the Court takes judicial notice of the fact that

7 this Court has found Defendants to wrongfully intercepted a program in the past.  (*See J. & J. Sports*

8 *Productions, Inc. v. Barajas, et al.,* Case No. 1:15-cv-01354 DAD JLT)  In that case, the Court has

9 recommended no enhanced damages based upon an insufficient showing justifying the award.

10 However, because the Court finds here Defendants have a demonstrated course of willful violations of

11 the law, the Court finds that Plaintiff is entitled to enhanced damages. Thus, the Court will award

12 $15,000 in enhanced damages.

13    Finally, because Plaintiff chose to receive statutory damages rather than actual damages under

14 the Communications Act, damages for conversion are subsumed into the total award of $10,000.  *See,*

15 *e.g., Joe Hand Promotions, Inc. v. Behari*, 2013 U.S. Dist. LEXIS 37277 at *8, n.2 (E.D. Cal. Mar. 18,

16 2013) (explaining damages conversion would not be awarded "because the recommended statutory

17 damages will sufficiently compensate plaintiff such that an award for conversion damages would be

18 duplicative"); *J &J Sports Productions v. Mannor*, 2011 U.S. Dist. LEXIS 32367, at *7 (E.D. Cal. Mar.

19 28, 2011) (declining to award damages for conversion because "plaintiff has been sufficiently

20 compensated through the federal statutory scheme" where the award total was $3,200 and the cost of

21 the proper license was $2,200); *J & J Sports Productions v. Bachman*, 2010 U.S. Dist. LEXIS 44884, at

22 *22 (E.D. Cal. May 7, 2010) (declining conversion damages because statutory damages "sufficiently

23 compensate[d]" the plaintiff).

24

25    [2] Courts in this district have found that the statutory maximum is not an appropriate award for a first-time offender and in the absence of aggravating factors.  *See, e.g., J & J Sprots Prod. v. Corona*, 2013 U.S. Dist. LEXIS 96462 (E.D. Cal.
26 July 10, 2013) (awarding $7,000 in damages where the defendant broadcast the program on two televisions, there was no premium for food or drink); *Joe Hand Promotions v. Brown,* 2010 U.S. Dist. LEXIS 119435 (E.D. Cal. Oct. 27, 2010)
27 (awarding $4,000 in damages where the program was broadcast on six 60-inch televisions, and there was no premium for food or drink); *J & J Sports Productions, Inc. v. Morales*, 2012 U.S. Dist. LEXIS 30942 (E.D. Cal. March 8, 2012)
28 (awarding $4,400 in statutory damages where the sublicense cost $2,200 for the broadcast that the defendants displayed on three televisions, ranging in size up to 54"); *J & J Sports Productions v. Sorondo*, 2011 U.S. Dist. LEXIS 99951 (E.D. Cal. Sept. 6, 2011) (awarding $3,600 in statutory damages, an amount two times the cost of a sublicense).

8

1    **VI.     Findings and Recommendations**

2        The *Eitel* factors weigh in favor of granting default judgment, and the entry of default judgment

3    is within the discretion of the Court.  *See Aldabe*, 616 F.2d at 1092.  However, the damages requested

4    are disproportionate to Defendants' actions.  Importantly, when determining the amount of damages to

5    be awarded for signal piracy, "the principle of proportionality governs."  *Backman*, 102 F.Supp.2d at

6    1198.  Under this principle, "distributors should not be overcompensated and statutory awards should

7    be proportional to the violation."  *Id.*

8        Accordingly, the Court recommends the award of $10,000 plus $15,000 in enhanced damages

9    for Defendants' wrongful acts.  This amount both compensates Plaintiff for the wrongful act and is a

10   suitable deterrent against future acts of piracy.  *See Kingvision Pay-Per-View v. Lake Alice Bar*, 168

11   F.3d 347, 350 (9th Cir. 1999) (observing that a lower statutory award may deter while not destroying a

12   business).

13       Based upon the foregoing, **IT IS HEREBY RECOMMENDED**:

14       1.      Plaintiff's application for default judgment (Doc. 12) be **GRANTED IN PART AND**

15               **DENIED IN PART AS FOLLOWS**:

16               A.     Plaintiff's request for statutory damages for the violation of the Communications

17                      Act be **GRANTED** in the amount of $10,000;

18               B.     Plaintiff's request for enhanced damages be **GRANTED** in the amount of

19                      $15,000;

20               C.     Plaintiff's request for damages for the tort of conversion be **DENIED**;

21       2.      Judgment be entered in favor of Plaintiff J & J Sports Productions, Inc. and against

22               Defendants Miguel Angel Barajas and Guillermina Carrizales, individually and doing

23               business as The Village Sports Bar and Grill; and

24       3.      Plaintiff be directed to file any application for attorney's fees pursuant to 47 U.S.C. §

25               605 no later than fourteen days from the entry of judgment.

26       These Findings and Recommendations are submitted to the United States District Judge

27   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local

28   Rules of Practice for the United States District Court, Eastern District of California.  Within fourteen

days of the date of service of these Findings and Recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

  Dated:   __**March 22, 2016**__                    _____**/s/ Jennifer L. Thurston**
                                                      UNITED STATES MAGISTRATE JUDGE